# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00521-CV

**Michael Maxwell McDaniel, Appellant**

**v.**

**Dawn L. McDaniel, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
### NO. FM206653, HONORABLE PATRICK O. KEEL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Michael Maxwell McDaniel ("Maxwell") challenges the trial court's decree awarding his former wife, Dawn L. McDaniel, a disproportionate share of the community estate. In his first six issues, Maxwell contends that the evidence is legally and factually insufficient to support Dawn's claims for equitable reimbursement and economic contribution, characterization of certain stock holdings as Dawn's separate property, and calculation of interest earned on the stock holdings during marriage. In his seventh issue, Maxwell contends that the trial court abused its discretion by awarding a disproportionate share of the community estate to Dawn. For the reasons set forth below, we affirm the judgment of the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

Maxwell and Dawn were married in 1997 and during the early part of their marriage lived in Seattle. They later moved to Austin and built a house on Osprey Ridge Loop in Lago Vista

that cost approximately $1.7 million ("Osprey house"). Part of the funds to build the house came from Dawn's separate property trust funded by gifts from her father before and during the marriage. The McDaniels lived in the house for about two years, then sold it in May 2002 because they could no longer afford it. They then built another house on Harris Boulevard in Austin ("Harris house"). Maxwell and Dawn separated on September 29, 2002, and Dawn filed for divorce on October 1, 2002. They did not have any children.

In her amended petition for divorce, Dawn sought confirmation of (i) her separate property and (ii) equitable reimbursement and economic contribution claims for separate property spent on the community. Maxwell also asserted separate property claims for equitable reimbursement and economic contribution but abandoned the claims before trial. The parties proceeded to a bench trial in April 2003. At the two-day trial, financial experts testified for both sides, giving their opinions about the characterization and division of the property. Maxwell and Dawn also testified, as well as Dawn's father, who testified about his gifts to Dawn before and during the marriage.

In June 2003, the trial court entered an amended decree of divorce and in July 2003 issued amended findings of fact and conclusions of law. These documents provide, in pertinent part: (i) the parties will divide the net proceeds of the sale of the Harris house, with Maxwell as the listing agent for the first four months that the house is on the market; (ii) Dawn's trust is her separate property; (iii) Dawn is entitled to equitable reimbursement claims of $642,409 and $383,567 for expenditures of separate property benefiting the community, offset by a community equitable reimbursement claim of $389,872 benefiting Dawn's separate property; (iv) Dawn is entitled to an

2

economic contribution claim of $277,104 for expenditures of separate property benefiting the community, with a lien against a $250,000 community certificate of deposit; and (v) money held back from the sale of Dawn's stock ("MSGI holdback money") is Dawn's separate property, with interest of $35,736 as community property. Dawn was awarded the $35,736 in interest. Maxwell was awarded his real estate business. Further, they each retained their retirement accounts, equally divided the furniture, and shared equally in community tax liabilities and the mortgage until the Harris house was sold.

Maxwell filed a motion for new trial, which was overruled by operation of law. He then filed this appeal. In his first six issues, he contends that the evidence is legally and factually insufficient to support the findings that Dawn is entitled to equitable reimbursement claims of $642,409 and $383,567 for expenditures of separate property benefiting the community; Dawn's separate property is entitled to an economic contribution claim of $277,104 for expenditures of separate property benefiting the community, including the lien against the $250,000 certificate of deposit; and the MSGI holdback money is Dawn's separate property that earned $35,736 in interest as community property. In his seventh issue, Maxwell contends that the trial court abused its discretion by awarding a disproportionate share of the community estate to Dawn.

## ANALYSIS

### *General Principles about Marital Estates*

Because this appeal concerns the trial court's property division, our review of that division must be made in the context of the general principles governing the division of property in divorce cases. Community property consists of the property, other than separate property, acquired

3

by either spouse during marriage. *See* Tex. Fam. Code Ann. § 3.002 (West 1998); *Barnett v. Barnett*, 67 S.W.3d 107, 111 (Tex. 2001). All property possessed by either spouse during or on dissolution of marriage is presumed to be community property. Tex. Fam. Code Ann. § 3.003(a) (West 1998); *Barnett*, 67 S.W.3d at 111. To overcome the community property presumption, a spouse claiming assets as separate property is required to establish their separate character by clear and convincing evidence. Tex. Fam. Code Ann. § 3.003(b) (West 1998). "Clear and convincing" evidence means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002).

### *Sufficiency of the Evidence*

Six of Maxwell's seven issues challenge the legal and factual sufficiency of the evidence. In a legal sufficiency review when the burden of proof on an issue is by clear and convincing evidence, we "should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *Id.* at 266. If, after conducting our legal sufficiency review of the evidence, we determine no reasonable fact finder could form a firm belief or conviction that the matter that must be proven is true, then we must conclude the evidence is legally insufficient. *Id.*

In a factual sufficiency review, we must give due deference to evidence a fact finder could reasonably have found clear and convincing. *Id.* We should consider whether disputed evidence is such that a reasonable fact finder could not have resolved the disputed evidence in favor of its finding. *Id.* If, in light of the entire record, the disputed evidence a reasonable fact finder

4

could not have credited in favor of the finding is so significant that a fact finder could not have reasonably formed a firm conviction or belief, then the evidence is factually insufficient. *Id.* Although the trial court issued findings of fact and conclusions of law, because we have a complete reporter's record, we are not bound by the trial court's findings of fact. *Tucker v. Tucker*, 908 S.W.2d 530, 532 (Tex. App.—San Antonio 1995, writ denied). Instead, we review the findings of fact for legal and factual sufficiency of the evidence to support them, under the same standard as reviewing jury findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). We now turn to Maxwell's challenges to the sufficiency of the evidence.

### *Equitable Reimbursement Claims*

In his first and second issues, Maxwell contends that the evidence is legally and factually insufficient to support the trial court's findings that Dawn is entitled to equitable reimbursement claims of $642,409 and $383,567 for expenditures of separate property benefiting the community.

A party may bring a claim for reimbursement of payments by one marital estate to satisfy unsecured liabilities of another marital estate. Tex. Fam. Code Ann. § 3.408(b)(1) (West Supp. 2004). A trial court resolves claims for reimbursement under equitable principles. *Id.* § 3.408(c) (West Supp. 2004). The right of reimbursement "is not an interest in property or an enforceable debt, per se, but an equitable right which arises upon dissolution of the marriage." *Vallone v. Vallone*, 644 S.W.2d 455, 458-59 (Tex. 1982). Permissible reimbursement may run from community estate to separate estate, from separate estate to community estate, and from separate estate to separate estate. *Alsenz v. Alsenz*, 101 S.W.3d 648, 655 (Tex. App.—Houston [1st Dist.]

2003, pet. denied) (citing *Dakan v. Dakan*, 83 S.W.2d 620, 627 (Tex. 1935)). "[T]he payment by one marital estate of the debt of another creates a prima facie right of reimbursement." *Penick v. Penick*, 783 S.W.2d 194, 196 (Tex. 1988). But the party seeking reimbursement bears the burden of proving his or her entitlement to it. *Jensen v. Jensen*, 665 S.W.2d 107, 110 (Tex. 1984); *Vallone*, 644 S.W.2d at 459.

In evaluating a claim for reimbursement, the court shall determine whether to recognize the claim and order a division of the claim "in a manner that the court considers just and right." Tex. Fam. Code Ann. § 7.007(b) (West Supp. 2004). The court also should consider any offsetting benefits to the estate whose assets were expended. *Penick*, 783 S.W.2d at 197-98; *see also Gutierrez v. Gutierrez*, 791 S.W.2d 659, 663 (Tex. App.—San Antonio 1990, no writ) (court must at least consider offsetting benefits when spouse opposing reimbursement so requests). The trial court's discretion in evaluating a claim for reimbursement is as broad as that discretion exercised by a trial court in making a just and proper division of the community estate. *Penick*, 783 S.W.2d at 198.

Maxwell does not dispute that Dawn expended separate property on the community, nor does he dispute the amounts expended. He instead contends that Dawn is not entitled to the equitable reimbursement claims because she offered "no evidence at all regarding the benefits received by her separate estate for the payments she has made benefitting the community estate." The court found by clear and convincing evidence that Dawn's separate estate is entitled to equitable reimbursement claims of $642,409 and $383,567, offset by $389,872 that the community paid for

6

income taxes on Dawn's separate property.[1]  The trial court did not, however, place any liens against the community for Dawn's equitable reimbursement claims.

In her first equitable reimbursement claim, Dawn presented evidence that she paid $642,409 out of her separate funds toward a margin line of credit that the McDaniels opened to pay for the lot and construction of the Osprey house.  Included in her evidence were schedules prepared by her financial expert, John Anderson, tracing the payments to Dawn's separate property.[2]  Maxwell contends that this reimbursement claim should be offset by the benefit that Dawn received by living in the Osprey house for two years.  But this is not proof of any benefit to the separate estate.  Instead, it only shows a benefit to Dawn as a member of the community.  A trial court may abuse its discretion if it fails to consider offsetting benefits to the contributing estate.  *See Gutierrez*, 791 S.W.2d at 663.  Here, we find no such abuse.  Instead, Dawn presented clear and convincing evidence of $642,409 expended from her separate funds to benefit the community.  According the trial court "great latitude . . . in applying equitable principles to value a claim for reimbursement," *Penick*, 783 S.W.2d at 198, we do not find that the trial court erred in concluding that Dawn's separate estate is entitled to an equitable reimbursement claim for $642,409.

In her second equitable reimbursement claim, Dawn presented evidence that she paid $383,567 out of her separate funds toward a mortgage, credit cards, income tax, "additional homestead expenditures," and "payment on assets."  Dawn's financial expert prepared schedules tracing these payments to her separate property.  Maxwell contends that Dawn is not entitled to

---

[1]  Maxwell does not contest the equitable reimbursement offset to the community.

[2]  *See, e.g.*, *Norris v. Vaughan*, 260 S.W.2d 676, 679 (Tex. 1953) (character of separate property is unaltered by mutations and changes, as long as it is traceable and identifiable).

7

reimbursement on this claim not only because she failed to provide proof of offsetting benefits but also because some of the payments may have been for living expenses, which are not reimbursable under the family code. *See* Tex. Fam. Code Ann. § 3.409(2) (West Supp. 2004). Dawn agrees, at least to a certain extent, that this claim is not as strong as the $642,409 claim. She states in her brief that "even if [the claim] does not cleanly fit into a right of reimbursement claim," the offset between her $642,409 claim and the community's $389,872 claim was appropriate. At oral argument, her counsel stated that the $383,567 claim was not fleshed out at trial. However, he also argued that Dawn presented proof that most of this claim was for unsecured debt, which is reimbursable. *See id.* § 3.408(b)(1).

Again, Maxwell does not dispute that Dawn expended this separate property toward the community. He contends, however, that because Dawn's expert did not calculate the economic benefit that her separate estate received from paying community debts, Dawn is not entitled to this reimbursement claim. We find no demonstration in the record that the trial court failed to consider the arguments and evidence of both parties as to Dawn's claim. The trial court took into consideration benefits to the separate estate by offsetting Dawn's claims with the community's claim for income tax paid on Dawn's separate property. In fact, the trial court merely offset the equitable claims on both sides instead of imposing a lien against the community for Dawn's separate contributions. According the trial court "great latitude . . . in applying equitable principles to value a claim for reimbursement," *Penick*, 783 S.W.2d at 198, we do not find that the trial court erred in concluding that Dawn is entitled to an equitable reimbursement claim for $383,567. We find the evidence legally and factually sufficient to support Dawn's claims for equitable reimbursement and

8

therefore that the trial court's findings in favor of Dawn's claims for equitable reimbursement were not in error. We overrule Maxwell's first and second issues.

### *Economic Contribution Claim*

In his third and fourth issues, Maxwell contends that the evidence is legally and factually insufficient to support the trial court's finding that Dawn's separate estate is entitled to an economic contribution claim of $277,104 paid toward the Osprey house against remaining community property, with a lien against a community $250,000 certificate of deposit. Maxwell does not dispute that Dawn expended separate funds toward the Osprey house, nor does he dispute that Dawn has a legitimate claim for economic contribution. He instead disputes the calculation of the amount of the contribution.

A marital estate that makes an economic contribution to property owned by another marital estate has a claim for economic contribution with respect to the benefited estate. Tex. Fam. Code Ann. § 3.403(a) (West Supp. 2004). The formula for calculating the amount of the economic contribution of one marital estate to property owned by another marital estate is set forth in section 3.403(b) of the family code. *See id.* § 3.403(b) (West Supp. 2004).[3] Here, this calculation includes

---

[3] The amount of an economic contribution claim is equal to the product of:

    (1)  the equity in the benefited property on the date of dissolution of the marriage, the death of a spouse, or disposition of the property; multiplied by

    (2)  a fraction of which:

        (A)  the numerator is the economic contribution to the property owned by the benefited marital estate by the contributing marital estate; and

9

a determination of the net equity in the community-owned property at the time of the first economic contribution by the separate estate. *See id.* § 3.403(b-1)(1)(A) (West Supp. 2004).

Maxwell specifically contends that the evidence is insufficient to support Dawn's economic contribution claim because Dawn's expert, in calculating a net equity figure at the time of Dawn's first economic contribution, assumed that the fair market value of the property was its total cost at the end of the building project, which occurred after Dawn's first economic contribution. "Equity" is defined as "the amount computed by subtracting from the fair market value of the property as of a specific date the amount of a lawful lien specific to the property on that same date." *Id.* § 3.401(3) (West Supp. 2004). The family code does not define "fair market value." Nevertheless, Maxwell asserts, without a citation to authority, that "substituting cost of property for fair market value is not appropriate."

Maxwell appears to be arguing that the fair market value of the property should be lower at the time of Dawn's first economic contribution than Anderson stated. Using a *lower* fair

---

(B) the denominator is an amount equal to the sum of:

 (i) the economic contribution to the property owned by the benefited marital estate by the contributing marital estate; and

 (ii) the contribution by the benefited estate to the equity in the property owned by the benefited estate.

Tex. Fam. Code Ann. § 3.403(b) (West Supp. 2004).

10

market value, however, leads to a greater benefit to the community for Dawn's separate economic contribution, in turn leading to a *higher* value for Dawn's economic contribution claim.[4]

The record contains sufficient evidence to support Anderson's estimate that the fair market value of the Osprey house at the time of Dawn's first economic contribution was the total cost of the house. According to the tracing schedules prepared by Anderson, Dawn's first economic contribution was in May 2000. Maxwell introduced closing papers showing that the McDaniels sold the house in May 2002. Dawn testified that she and Maxwell lived in the house for approximately two years. Thus, it is reasonable to assume that Dawn's first economic contribution was close in time to the completion of the house. We hold that Dawn presented sufficient evidence of the value of her economic contribution claim and accordingly that the trial court's finding in favor of her economic contribution claim was not in error. We overrule Maxwell's third and fourth issues.

---

[4] To illustrate, Anderson calculated that Dawn's separate property had a 33 percent interest in the equity of the sale of the Osprey house, based on equity of $741,103 at the time of the first economic contribution:

$$\$838,985 \text{ (equity at time of sale)} \times \frac{\$370,772 \text{ (separate contribution)}}{\$370,772 \text{ (separate contribution)} + \$741,103 \text{ (equity at beginning)}} = 33.35\%$$

Had the equity at the time of the first economic contribution been lower, for example $500,000, the value of Dawn's economic contribution claim would be greater:

$$\$838,985 \text{ (equity at time of sale)} \times \frac{\$370,772 \text{ (separate contribution)}}{\$370,772 \text{ (separate contribution)} + \$500,000 \text{ (equity at beginning)}} = 42.57\%$$

***Characterization of the MSGI Holdback Money***

In his fifth and sixth issues, Maxwell contends that the evidence is legally and factually insufficient to demonstrate that any of the property from the sale of stock termed the MSGI holdback money is Dawn's separate property because the money was inextricably commingled with community property. It follows, Maxwell argues, that the money should be characterized as community property. "Generally, whether property is separate or community is determined by its character at inception." *Barnett*, 67 S.W.3d at 111. When separate property produces income during marriage, the income is generally community property. *See Smith v. Lanier*, 998 S.W.2d 324, 332 n.7 (Tex. App.—Austin 1999, pet. denied) (cash dividends earned during marriage on separate property stock were community property) (citing *Bakken v. Bakken*, 503 S.W.2d 315, 317 (Tex. Civ. App.—Dallas 1973, no writ)).

Maxwell contends that Dawn "failed to introduce any testimony regarding the allocation between the principal and interest" of the MSGI holdback money. We disagree. Dawn presented evidence that the origin of the MSGI holdback money was stock that her father gave to her as gifts, before and during the marriage. Property acquired before marriage and property acquired during marriage by gift are separate property. Tex. Fam. Code Ann. § 3.001(1), (2) (West 1998). Dawn's father testified that he gave Dawn two separate gifts: 500 shares and 6,013 shares of stock in Grizzard Advertising, the company for which he worked. At some point, MSGI bought Grizzard, and Dawn sold some of her shares. MSGI held back a certain amount of money from all stock sales, which was later distributed to the shareholders. Dawn's father testified that the total amount of the "holdback" money was between $4 and $5 million and that the interest was approximately $740,000.

12

Maxwell complains that although Dawn testified that she had received checks for the holdback money from MSGI, she did not produce the checks or testify about their exact amount. However, John Anderson, Dawn's expert, calculated Dawn's percentage of the total MSGI shares. Based on these calculations and with the figures from Dawn's father, he determined that the principal of the holdback money was $222,753.90. He calculated the interest accrued, which no one disputes is community property, to be $35,736. Furthermore, both parties introduced into evidence the McDaniels' 2000 federal income tax return, which included a statement from Dawn that she had exchanged shares in Grizzard Advertising for shares in MSGI, along with cash and "a contingent right to receive additional funds from funds held in escrow for future recalculations pursuant to the Holdback Agreement."

The trial court determined that the MSGI holdback money, with an approximate balance of $200,000, is Dawn's separate property and that the interest of $35,736 is community property. We hold that Dawn presented legally and factually sufficient evidence demonstrating that the principal in the MSGI holdback money is her separate property and calculating the amount of interest earned on the money during marriage. Accordingly, trial court's findings were not in error. We overrule Maxwell's fifth and sixth issues.

### Division of Community Property

In his seventh issue, Maxwell contends that the trial court abused its discretion by awarding a disproportionate share of the community estate to Dawn. The trial court has wide latitude to divide the marital estate "in a manner that the court deems just and right." Tex. Fam.

13

Code Ann. § 7.001 (West 1998); *Schlueter v. Schlueter*, 975 S.W.2d 584, 588 (Tex. 1998). The division of the community estate is not required to be equal, *Schlueter*, 975 S.W.2d at 588, and the court may consider many factors in making the division. *Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981); *see O'Carolan v. Hopper*, 71 S.W.3d 529, 532 (Tex. App.—Austin 2002, no pet.). When reviewing a property division, an appellate court will assume that the trial court acted within its discretion in dividing property. *Vallone*, 644 S.W.2d at 460. We will not disturb the trial court's decision unless a clear abuse of discretion is shown. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex. 1987) (citing *Bell v. Bell*, 513 S.W.2d 20, 22 (Tex. 1974)). The appellant bears the burden of showing that the trial court's abuse of discretion caused a division of property so disproportionate that the division was manifestly unjust and unfair. *Hedtke v. Hedtke*, 248 S.W. 21, 23 (Tex. 1923). The appellate court, therefore, will reverse a property division only if the error materially affects the trial court's property division. *Lewis v. Lewis*, 944 S.W.2d 630, 631 (Tex. 1997) (citing *Jacobs v. Jacobs*, 687 S.W.2d 731, 732-33 (Tex. 1985)).

Maxwell argues that because of Dawn's equitable reimbursement claims, Dawn received 88 percent of the community, leaving him only 12 percent. But the trial court did not place any liens against the community for Dawn's equitable reimbursement claims. It merely offset the equitable claims on both sides. The trial court ordered that the community property estate be divided as set forth in an exhibit prepared by Dawn. According to that exhibit, each party was to receive one-half of the proceeds from the sale of the Harris house. Of the other assets listed, Dawn received $108,200 and Maxwell received $111,363. The trial court further found that Dawn's economic contribution claim is entitled to a lien against a $250,000 community certificate of deposit. The trial

14

court awarded Maxwell all of his real estate business, which he began during the marriage, without granting any interest in the business to Dawn.

The division of the community estate is not required to be equal, and the court may consider many factors in making the division. *Murff*, 615 S.W.2d at 699. Here, the trial court took into consideration the extent that Dawn's separate property contributed to the community, a factor that the trial court was entitled to consider. Before trial, Maxwell abandoned his separate property claims against the community. We find no abuse of discretion in the trial court's division of the community estate and overrule Maxwell's seventh issue. Having overruled all of Maxwell's issues, we affirm the judgment of the district court.

## CONCLUSION

We hold that the evidence is legally and factually sufficient to support Dawn's equitable reimbursement claims. According the trial court "great latitude . . . in applying equitable principles to value a claim for reimbursement," *Penick*, 783 S.W.2d at 198, we do not find that the trial court erred in concluding that Dawn is entitled to the claims. Concerning Dawn's economic contribution claim, we hold that Dawn presented sufficient evidence of the value of her claim, including the estimated fair market value of the Osprey house at the time of her first economic contribution, and accordingly that the trial court's finding in favor of her economic contribution claim was not in error.

We further hold that Dawn presented legally and factually sufficient evidence demonstrating that the principal of the MSGI holdback money is her separate property and

15

calculating the amount of interest earned on the money during marriage. Finally, the division of the community estate is not required to be equal, and the court may consider many factors in making the division. *Murff*, 615 S.W.2d at 699. The record reflects that the trial court took into consideration the extent that Dawn's separate property contributed to the community, a factor that the trial court is entitled to consider. We find no abuse of discretion in the trial court's unequal division of the community estate. Having overruled all of Maxwell's issues, we affirm the judgment of the district court.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   March 18, 2004

16