

# IN THE
# TENTH COURT OF APPEALS

## No. 10-11-00167-CV

# IN THE MATTER OF THE MARRIAGE OF
# ELIZABETH JONELLE MCLEMORE CHIZUM
# AND DAVID GAYLORD CHIZUM,

**From the 170th District Court
McLennan County, Texas
Trial Court No. 2008-3457-4**

## MEMORANDUM OPINION

In this appeal, appellant, Elizabeth Jonelle McLemore Chizum, challenges a final divorce decree entered by the trial court. In two issues, Elizabeth contends that the trial court abused its discretion by: (1) not reimbursing her for her separate-property contributions to the marital estate; and (2) failing to make a just and right division of the marital estate. We affirm.

### I. FACTUAL BACKGROUND

Elizabeth and appellee, David Gaylord Chizum, were married on April 5, 1997, and separated in April 2008. At the time of the final hearing on October 13, 2010, Elizabeth was sixty-eight years old and David was sixty-six years old. When they got

married, both Elizabeth and David owned houses as their separate property. Shortly after getting married, Elizabeth and David decided to purchase a house and some land in Valley Mills, Texas, for $201,293.83. Because they were purchasing property together in Valley Mills, both David and Elizabeth sold their separate-property houses. Elizabeth testified that she received $52,697.81 for the sale of her house. The sale of David's separate-property house netted proceeds in the amount of $123,844.61. The couple used the proceeds from the sale of Elizabeth's house to pay for some of the down payment on the Valley Mills property. In addition to the proceeds from Elizabeth's house, the couple also used $5,821.63 from Elizabeth's separate-property savings account and $1,000 from David's separate-property to cover the $59,519.44 down payment on the Valley Mills property. The couple financed the remaining balance of approximately $140,000. It was later decided that the proceeds from the sale of David's house would be used to pay down the remaining $140,000 mortgage. After allocating the $123,844.61 that David received from the sale of his house towards the mortgage, the remaining balance owed on the Valley Mills property was $16,155.39, which was paid using community funds.

After purchasing the Valley Mills property, the couple completed a series of repairs and improvements. On appeal, Elizabeth contends that the improvements were made "from August to November of 1998" and included:

> fixing a rotted balcony, extending the front porch roof, replacing the front door, replacing windows, a new roof was put on the house, a back deck and upstairs deck was rebuilt, they bought new fixtures, fans, locks, a closet was added to the master bedroom, new tile and carpet were laid, and an outside shop was added to the property.

Elizabeth estimated that the cost of the improvements was approximately $60,000. According to Elizabeth, the improvements to the Valley Mills property were paid from her University Retirement Fund and personal money-market account, both of which Elizabeth characterizes as her separate property. In support of her contention, Elizabeth proffered tax statements, which indicated that she had withdrawn $77,709 from her separate-property accounts, though she admitted that she did not have receipts or cancelled checks to prove that these funds were used to pay for the improvements and that the funds were used to pay "[l]iving expenses, like groceries and utility bills."[1] On the other hand, David estimated that the improvements cost approximately $20,000, and he provided documentation showing that, on September 8, 1998, $14,120 was paid to Brother's Construction Company from his separate-property account. However, he did not itemize what the $14,120 was spent on other than generically stating "home[-]improvement expenses."

Later, community funds were used to pay for David to obtain his teacher certification. Elizabeth contends that $5,500 in community funds were used to finance David's teacher certification, but David asserts that only $3,500 in community funds was used. As of the date of the final hearing, David was employed as a part-time substitute teacher for the Elgin Independent School District ("EISD"). Elizabeth, on the

---

[1] Elizabeth acknowledged that $2,000 was withdrawn from David's IRA and may have been used to pay for the improvements.

other hand, was previously employed as a psychologist; however, she is no longer able to work because she became disabled in 1996.[2]

Also, on appeal, David states that the couple had outstanding credit-card debt to USAA. While both parties had used the credit card for medical procedures and prescriptions, David contended that he paid off the portion of the debt attributable to his medical procedures and that the remaining $12,000 balance was for dental procedures performed on Elizabeth.

## II.     PROCEDURAL BACKGROUND

On September 22, 2008, Elizabeth filed for divorce, alleging that the marriage had "become insupportable because of discord or conflict of personalities."[3] Elizabeth requested that she be allowed to keep the Valley Mills property and that David reimburse her for approximately $150,000 for the separate-property contributions she allegedly made to the property. David answered Elizabeth's divorce petition and requested that the trial court, among other things, order the sale of the Valley Mills property with Elizabeth receiving 29.3% of the proceeds as her separate property (this percentage apparently corresponded to the proportionate amount of money Elizabeth contributed to the purchase of the property), David receiving 62.7% of the proceeds as

---

[2] Despite her inability to work, Elizabeth admitted that she receives civil-service retirement in addition to a disability annuity. Based on this income, Elizabeth testified, in support of her request to be awarded the Valley Mills property, that she would be able to support herself if she was allowed to keep the Valley Mills property.

[3] At the final hearing, Elizabeth asserted that David is a writer of "sexual erotic fiction" and that she sought the divorce because David had written for and submitted a picture to a nudist magazine.

his separate property, and the remaining 8% to be divided equally as community property.

On October 13, 2010, the trial court conducted a hearing in this matter. At the conclusion of the hearing, the trial court ordered that the Valley Mills property be sold and that Elizabeth would receive 40% of the first $230,000 in net proceeds received from the sale of the property. David was awarded the remaining 60% share of the first $230,000 in net proceeds realized from the sale. Any remaining net proceeds were ordered to be divided between the parties equally, and in addition to a lengthy listing of the parties' separate property, the trial court ordered that the outstanding credit-card debt be shared equally by the parties.

Thereafter, Elizabeth filed a motion for new trial, arguing that the trial court abused its discretion "by failing to consider [her] health and medical issues." The trial court subsequently denied Elizabeth's motion for new trial. Neither party requested findings of fact or conclusions of law from the trial court. This appeal ensued.

### III.   STANDARD OF REVIEW

The Texas Family Code requires the trial court to "order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party . . . ." TEX. FAM. CODE ANN. § 7.001 (West 2006). We review the trial court's division of the property in a divorce decree under an abuse of discretion standard. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981). "Mathematical precision in dividing property on divorce is usually not possible." *Id.* at 700. Wide latitude and discretion rests with the trial court, and it "is empowered to use its legal knowledge and

its human understanding and experience."  *Id.*; *see Vallone v. Vallone*, 644 S.W.2d 455, 460 (Tex. 1982).  We will reverse on appeal only if the property division is so disproportionate as to be manifestly unjust or unfair.  *Barnard v. Barnard*, 133 S.W.3d 782, 787 (Tex. App.—Fort Worth 2004, pet. denied); *Smith v. Smith*, 22 S.W.3d 140, 143 (Tex. App.—Houston [14th Dist.] 2000, no pet.).  A trial court is presumed to have properly exercised its discretion in dividing the assets of a marriage.  *Murff*, 615 S.W.2d at 699; *see Saldana v. Saldana*, 791 S.W.2d 316, 319 (Tex. App.—Corpus Christi 1990, no writ).

Community property does not need to be divided equally, but the division must be equitable.  *See Kimsey v. Kimsey*, 965 S.W.2d 690, 704 (Tex. App.—El Paso 1998, pet. denied); *see also O'Carolan v. Hopper*, 71 S.W.3d 529, 532 (Tex. App.—Austin 2002, no pet.) ("The trial court's discretion is not unlimited, and there must be some reasonable basis for an unequal division of the property.").  In determining whether the division of the community estate is equitable, the trial court may consider the following non-exclusive factors:  (1) the spouses's capacities and abilities; (2) benefits that the party not at fault would have derived from the continuation of the marriage; (3) business opportunities; (4) education; (5) physical conditions of the parties; (6) the relative financial conditions and obligations of the parties; (7) size of the separate estates; (8) the nature of the property; (9) disparities in earning capacities and income; (10) the fault of the breakup of the marriage; and (11) any wasting of the community assets by one of the spouses.  *Murff*, 615 S.W.2d at 698-99; *see Garcia v. Garcia*, 170 S.W.3d 644, 653 (Tex. App.—El Paso 2005, no pet.).

When an appellant challenges the trial court's order on legal or factual sufficiency grounds, we do not treat these as independent grounds of reversible error but, instead, consider them as factors relevant to our assessment of whether the trial court abused its discretion. *Boyd v. Boyd*, 131 S.W.3d 605, 611 (Tex. App.—Fort Worth 2004, no pet.); *see Wells v. Wells*, 251 S.W.3d 834, 838 (Tex. App.—Eastland 2008, no pet.). To determine whether the trial court abused its discretion because the evidence is legally or factually insufficient, we consider whether the trial court (1) had sufficient evidence upon which to exercise its discretion and (2) erred in the application of that discretion. *Lindsey v. Lindsey*, 965 S.W.2d 589, 592 (Tex. App.—El Paso 1998, no pet.); *see Wells*, 251 S.W.3d at 838.

Neither party requested findings of fact or conclusions of law in this case. We must, therefore, presume that the trial court made all the necessary findings to support its judgment. *Pharo v. Chambers County*, 922 S.W.2d 945, 948 (Tex. 1996). If the trial court's implied findings are supported by the evidence, we must uphold the judgment on any theory of law applicable to the case. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). In determining whether some evidence supports the judgment and implied findings of fact, we consider only that evidence most favorable to the issue and disregard entirely any contrary evidence. *Id.*

When the burden of proof at trial is by clear and convincing evidence, we apply a higher standard of legal sufficiency review. *See In re J.F.C.*, 96 S.W.3d 256, 265-66 (Tex. 2002). Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the

allegations sought to be established. *See* TEX. FAM. CODE ANN. § 101.007 (West 2008). This intermediate standard falls between the preponderance standard of civil proceedings and the reasonable doubt standard of criminal proceedings. *In re G.M.*, 596 S.W.2d 846, 847 (Tex. 1980). While the proof must weigh heavier than merely the greater weight of the credible evidence, there is no requirement that the evidence be unequivocal or undisputed. *Boyd*, 131 S.W.3d at 611.

## IV. ELIZABETH'S REIMBURSEMENT CLAIM

In her first issue, Elizabeth asserts that the trial court abused its discretion by not fully reimbursing her for the contributions she made to the marital estate from her separate property. In particular, Elizabeth contends that her separate-property-retirement account "was completely depleted throughout the course of the marriage and that she made substantial separate[-]property contributions to the marital homestead."

### A. Applicable Law

Reimbursement is an equitable doctrine, and a court of equity is bound to look at all of the facts and circumstances and determine what is fair, just, and equitable. *Penick v. Penick*, 783 S.W.2d 194, 197 (Tex. 1988); *Gutierrez v. Gutierrez*, 791 S.W.2d 659, 663 (Tex. App.—San Antonio 1990, no writ); *see Vallone*, 644 S.W.2d at 458-59. The discretion to be exercised in evaluating a claim for reimbursement is equally as broad as the discretion exercised in making a just and right division of the community estate. *See Penick*, 783 S.W.2d at 198.

The party claiming reimbursement for their separate estate must provide clear and convincing evidence that the contribution came from the separate estate. *See Vallone*, 644 S.W.2d at 459 ("The party claiming the right of reimbursement has the burden of pleading and proving that the expenditures and improvements were made and that they are reimbursable."); *Henry v. Henry*, 48 S.W.2d 468, 477 (Tex. App.—Houston [14th Dist.] 1975, writ dism'd); *see also Salinas v. Salinas*, No. 13-10-00279-CV, 2011 Tex. App. LEXIS 7027, at *6 (Tex. App.—Corpus Christi Aug. 30, 2011, no pet.) (mem. op.). However, section 3.409 of the family code provides that the trial court may not recognize a claim for reimbursement for: "(1) the payment of child support, alimony, or spousal maintenance; (2) the living expenses of a spouse or child of a spouse; (3) contributions of property of a nominal value; (4) the payment of a liability of a nominal amount; or (5) a student loan owed by a spouse." TEX. FAM. CODE ANN. § 3.409 (West 2006).

## B. Discussion

On appeal, Elizabeth's reimbursement contention centers on her alleged contributions towards the repairs and improvements made to the Valley Mills property. In particular, Elizabeth argues that she should have been reimbursed $77,709 because her separate-property-retirement accounts were used to finance the repairs and improvements. However, at the final hearing, Elizabeth admitted that she could not produce receipts or cancelled checks showing that she used her separate property to finance all of the repairs and improvements. Moreover, Elizabeth acknowledged that she used some of the proceeds from her separate-property-retirement accounts for the

couple's living expenses, including groceries and utility bills, which, in light of section 3.409, does not support a claim for reimbursement.[4]  *See id.*  In addition, Elizabeth was unable to specify how much of her separate property was used to pay for the living expenses.  Furthermore, the parties differed on the value of the repairs and improvements made to the property.  Elizabeth first contended that $60,000 in repairs and improvements were made.  She later testified that the value of the repairs and improvements was $70,000.  On the other hand, David stated that only $20,000 in repairs and improvements were made.  And, in support of his contention, David proffered documentation that $14,120 was paid to Brother's Construction Company on September 8, 1998, from his separate-property account.

Essentially, in asserting her reimbursement claim, Elizabeth requested that the trial court simply accept her testimony and presume that because her retirement accounts were purportedly depleted, she was entitled to reimbursement.  It was within the province of the trial court, as the trier of fact, to judge the credibility of the witnesses and assign weight to their testimony.  *See Iliff v. Iliff*, 339 S.W.3d 74, 83 (Tex. 2011) (citing *Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 567 (Tex. 2000)).  And, in arriving at its judgment, the trial court clearly did not find Elizabeth's testimony regarding reimbursement to be credible or sufficient to warrant an offset for her alleged separate-property contributions.  *See Iliff*, 339 S.W.3d at 83; *see also Davis*, 34 S.W.3d at 567.

---

[4] Elizabeth notes in her appellate brief that:  "There is no doubt that both parties used separate property for living expenses throughout the course of the marriage, which would be a gift to the community; however, a substantial portion of wife's retirement was used during the exact same year that numerous improvements were made to the home."

Based on the foregoing, we conclude that Elizabeth has not proven by clear and convincing evidence her entitlement to reimbursement for the repairs and improvements allegedly made to the Valley Mills property. *See Vallone*, 644 S.W.2d at 459; *Henry*, 48 S.W.2d at 477; *see also Salinas*, 2011 Tex. App. LEXIS 7027, at *6. Accordingly, we cannot say that the trial court abused its discretion in denying her reimbursement claim. *See Penick*, 783 S.W.2d at 198. Elizabeth's first issue is overruled.

## V. THE TRIAL COURT'S JUST AND RIGHT DIVISION OF THE MARITAL ESTATE

In her second issue, Elizabeth argues that the trial court's division of the marital estate was not just and right because she suffers from "several debilitating health conditions" and is no longer able to work. Specifically, Elizabeth asserts that she should have been awarded a larger portion of the marital estate because of her medical condition and because David is employed as a part-time substitute teacher for the EISD.

Here, Elizabeth testified that her disability developed in 1996, prior to her marriage to David, and that David was not responsible for her disability. Moreover, Elizabeth admitted that she receives a disability annuity and a civil-service-retirement stipend, though she is unable to work. David testified that, though he has written several publications, he does not generate any royalties or receive substantial income from his publications. Furthermore, David did not dispute that he receives income from his retirement accounts. However, the record does not indicate how much income either Elizabeth or David receives from other sources, including retirement and disability accounts.

The record also contains documentation demonstrating that David paid $14,120 from his separate property to a construction company for repairs and improvements on the property. It is undisputed that David paid $123,844.61 towards the mortgage on the property and $1,000 towards the down payment from his separate property, while Elizabeth contributed $52,697.81 from the sale of her home and $5,821.63 from her separate-property savings account towards the down payment. And, as mentioned above, besides her testimony, which the trial court apparently did not find to be credible, Elizabeth has not provided any evidence indicating how much of her separate-property-retirement accounts were used to finance expenses not listed in section 3.409 of the family code. *See* TEX. FAM. CODE ANN. § 3.409. Essentially, the record before us demonstrates that Elizabeth contributed $58,519.44 ($52,697.81+$5,821.63) from her separate property towards the couple's property, and David contributed $138,964.61 ($123,844.61+$1,000+$14,120) from his separate property. The record does show that $77,709 was withdrawn from Elizabeth's separate-property-retirement accounts; however, because of the lack of receipts and other documentation, we are unsure if some or all of that amount was spent for the benefit of the community estate.

On appeal, Elizabeth also contends that the division of the marital property is unjust because "[t]he community had actually spent money for husband to begin a second career that he had thus far been successful in" and because "there [is] nothing prohibiting [David] from going back to full-time [employment as a teacher]." However, the record does not indicate how much David makes as a substitute teacher or how often David works. In addition, we find Elizabeth's argument that David could work

full-time as a teacher in the Elgin ISD to be speculative at best, especially considering the current economic climate. Moreover, the parties disputed the amount contributed towards David's teaching certification, and it is not clear how the couple paid for the certification (i.e., whether or not they took out a student loan). Elizabeth has not clearly demonstrated that the trial court failed to account for her separate-property contributions in the final distribution of the marital estate, especially considering that the undisputed record evidence demonstrates that David's separate-property contributions amounted to approximately 70% of the total contributions made to the community estate, while Elizabeth's contributions constituted approximately 30% of the total contributions.

Based on the record before us, we cannot say that Elizabeth has demonstrated that the trial court's division of the marital estate was unjust or so disproportionate as to be manifestly unfair and, thus, constituted an abuse of discretion. *See* TEX. FAM. CODE ANN. § 7.001; *see also Vallone*, 644 S.W.2d at 460; *Murff*, 615 S.W.2d at 698; *Barnard*, 133 S.W.3d at 787; *Smith*, 22 S.W.3d at 143. Accordingly, Elizabeth's second issue is overruled.

## VI. CONCLUSION

We affirm the judgment of the trial court.


AL SCOGGINS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed December 14, 2011
[CV06]