Roberto Martin GUTIERREZ,
Appellant,

v.

Patricia Ann Salinas
GUTIERREZ, Appellee.

No. 04–88–00112–CV.

Court of Appeals of Texas,
San Antonio.

June 29, 1990.

Julio A. Garcia, Laredo, for appellant.

Charles R. Borchers, Belinda Mendez, Laredo, for appellee.

Before CADENA, C.J., and PEEPLES and BIERY, JJ.

## OPINION

PEEPLES, Justice.

Roberto Gutierrez appeals from a divorce decree rendered after a nonjury trial. His 29 points of error challenge primarily (1) the court's findings and conclusions that his separate estate must reimburse the community estate for various expenditures of community funds to pay separate debts, and (2) the court's division of the marital estate. We hold that the court erred in certain of its rulings concerning reimbursement and property division, and therefore we reverse and remand the cause for a new property division. *See Jacobs v. Jacobs,* 687 S.W.2d 731, 732–33 (Tex.1985). We will refer to the parties as Patsy and Robert because those names were used by everyone who testified.

The parties were ceremonially married on October 13, 1983. Patsy contended that they entered a common-law marriage in 1979, but the court found otherwise. Patsy challenges that finding by cross point, but it is well within the evidence, which included the testimony of Robert and four other witnesses who disputed one or more of the elements of common-law marriage. Patsy filed this suit one month after the parties separated in October 1986. There are no children of the marriage.

The nonjury trial began in August 1987 with the live testimony of four custodians of bank records. Robert also testified live, but after a lengthy recess the parties agreed to submit the rest of the evidence by affidavit. The record consists of the live testimony mentioned, the affidavits of the parties and eight other witnesses, Robert's deposition, and many exhibits and photographs. In December 1987, the court rendered judgment and signed the decree from which Robert now appeals.

At the outset, Patsy challenges by cross point Robert's entire appeal because he did not present to the trial court the grounds of error that he urges in this court. *See* TEX.R.APP.P. 52(a). We reject this contention. Each of Robert's appellate complaints involves the relief granted in the judgment. He could not possibly have complained about the court's judgment prior to the rendition of the judgment itself, and the law does not penalize him for failing to do so. *See Brock v. Brock,* 586 S.W.2d 927, 930 (Tex.Civ.App.—El Paso 1979, no writ), *overruled on other grounds, Howell v. Coca–Cola Bottling Co.,* 599 S.W.2d 801, 802 (Tex.1980). Robert's motion for new trial urged each of the points that he has brought to this court. Patsy's cross point is overruled.

Robert's first point of error attacks the court's finding that the marriage be dissolved on the ground of cruelty in addition to insupportability. He does not complain that the court granted a disproportionate property division on fault grounds, and

therefore the cruelty finding has no effect one way or the other on the division of the marital estate. Nor does he contend that the finding has prejudiced him in any way. Because the divorce rests on the alternative grounds of cruelty and incompatibility, and the latter ground supports it, we find it unnecessary to consider the challenge to the cruelty finding.

## I. REIMBURSEMENT.

The court awarded Patsy a judgment for $85,406.65 as part of its just and right division of the marital estate. *See* TEX. FAM.CODE ANN. § 3.63 (Vernon Supp. 1990). The findings of fact and conclusions of law demonstrate that this figure represents the sum of seven different items of reimbursement for community funds spent on Robert's separate estate during the marriage.[1]

### A. Condominium.

 In point two Robert argues that the court erred in awarding reimbursement for payments made on his separate property condominium, which was the marital residence. It is undisputed that Robert acquired the condominium before the marriage and that the parties lived there during the marriage. The court's findings of fact show that it awarded Patsy reimbursement of $15,021.17 for the following:

a) Monthly payments made to discharge the debt on [Robert's] separate property Condominium since 1983 ($30,042.33) paid from community funds, cattle sales, C.D. interest, deer lease.

Robert attacks this finding on two grounds: (1) that the evidence is legally and factually insufficient to show that the condominium payments were made with community funds;[2] and (2) that the court erred in failing to take into account the benefit the community received by using the condominium as the marital residence. We sustain the second ground.

Several principles now govern a trial court's decision to grant reimbursement to one estate for its expenditures toward the purchase price of a different marital estate.[3] First, "a claim for reimbursement for funds expended by an estate for *improvements* to another estate is to be measured by the *enhancement in value* to the benefited estate." *Penick v. Penick*, 783 S.W.2d 194, 196 (Tex.1988) (emphasis add-

---

1. In Finding of Fact No. 7 (and Conclusion of Law No. 4, which is virtually identical), the court made the following findings:
 That the community estate should be reimbursed by the Respondent's [Robert's] separate property for community funds used to enhance and improve the separate property of the Respondent in the following manner [Patsy's one-half share is stated in brackets]:
 a) Monthly payments made to discharge the debt on Respondent's separate property Condominium since 1983 ($30,042.33) paid from community funds, cattle sales, C.D. interest, deer lease.... [$15,021.17]
 b) Annual payments on ranch loan (separate property) to the Federal Land Bank, since October 1983 from cattle sales ($43,-588.96).... [$21,794.48]
 c) L.N.B.—China Bo loan/note (separate property) amount paid on the note, from monthly $700.00 rentals to September 1987 is $10,500.00.... [$5,250.00]
 d) Enhanced value to China Bo realty, from improvements made—as per L.N.B. loan and China Bo monthly $700.00 rentals is $21,-682.00.... [$10,841.00]
 e) Delay rental paid to Respondent in 1985, by Drexel Oil Company, $18,000.00.... [$9,000.00]

 f) 30 head of cattle (Respondent had 70 at onset of parties' marriage), was increased by 50 head, after marriage, at $340.00 per head, $17,000. [$8,500.00]
 g) $15,000.00—to reimburse Petitioner, for time and effort expended to enhance Respondent, separate property (70 head cattle).... [$15,000.00]

2. In considering a "no evidence" or legal sufficiency point, we consider only the evidence favorable to the decision of the trier of fact and disregard all evidence and inferences to the contrary. *Davis v. City of San Antonio*, 752 S.W.2d 518, 522 (Tex.1988); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). In considering a factual sufficiency point, we assess all the evidence and reverse for a new trial only if the challenged finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

3. When the trial court rendered judgment in December 1987 it did not have the benefit of *Penick v. Penick*, 783 S.W.2d 194 (Tex.1988), which was decided in December 1988 and on which we place great reliance.

ed), quoting *Anderson v. Gilliland*, 684 S.W.2d 673, 675 (Tex.1985).[4]

■ Second, the same rules govern reimbursement for (1) payments on behalf of an estate and (2) improvements to an estate. "We view the advancement of funds by one marital estate to another under either transaction, payment of a purchase money debt or as a capital improvement, as essentially identical and therefore subject to the same kind of measurement." *Penick*, 783 S.W.2d at 197. In other words, enhancement is the measure of reimbursement in both situations.

■ Third, in keeping with the first two principles, the court must consider the offsetting benefits to the estates. Reimbursement is an equitable doctrine, and "a court of equity is bound to look at all the facts and circumstances and determine what is fair, just, and equitable." *Id.* (quoting 27 AM.JUR.2d, *Equity* § 102). The trier of fact should consider the benefits and detriments to each estate. The supreme court has rejected the notion that a trial court may simply "return to the [contributing estate] the actual amount advanced to reduce the principal indebtedness on the [benefited estate's] property without regard to the benefits received in return by the [contributing] estate." *Penick*, 783 S.W.2d at 197. Conversely, the court must "insure that a benefited estate is not required to pay more in reimbursement than the amount in which it was benefited by the other estate." *Anderson v. Gilliland*, 684 S.W.2d at 675.

■ Finally, the trial court has great discretion in deciding and evaluating a claim for reimbursement; that discretion is equally as broad as its discretion in making a just and right division of the community estate. *Penick v. Penick*, 783 S.W.2d at 198.

> [G]reat latitude must be given to the trial court in applying equitable principles to value a claim for reimbursement.... [An] equitable claim for reimbursement is not merely a balancing of the ledgers between the marital estates.

*Id.* As the court had said earlier in *Vallone v. Vallone*, 644 S.W.2d 455, 459 (Tex. 1982), "Reimbursement is not available as a matter of law, but lies within the discretion of the court." [5]

■ In the case before us, there is nothing in the record to suggest that the court considered in any way the benefit the community received when the parties lived in Robert's separate property for three years without paying rent. We do not necessarily say that the court, in its exercise of discretion, had to calculate reimbursement differently because of this factor. But we do hold that a court must at least consider offsetting benefits when a litigant asks it to. do so, as Robert did in this case. We reverse and remand to the trial court for consideration of the offsetting benefits that Robert asked the court to take into account.

**B. China Bo Restaurant.**

In points three through nine Robert challenges the court's granting reimbursement for community payments toward and enhancement of his separate property restaurant. Most of the facts on this issue were undisputed. Before this marriage Robert and his brother inherited the China Bo Restaurant, each owning an undivided half interest. In June 1986 they executed a five-year lease, with a monthly rental of $700. They also borrowed $17,000 from the Laredo National Bank to improve and prepare

---

4. In *Anderson* the court reviewed the three different measures of reimbursement that had been followed by the courts: (1) "enhancement alone, regardless of cost," (2) "enhancement or cost, whichever is less," and (3) "cost, regardless of enhancement." 684 S.W.2d at 674. The court adopted the first measure. *Id.* at 675.

5. We recognize that there is language in the cases that suggests otherwise. The supreme court spoke of the "right to reimbursement" in *Jensen v. Jensen*, 665 S.W.2d 107, 109–110 (Tex. 1984), and *Vallone v. Vallone*, 644 S.W.2d at 458–59, and in *Jensen* it remanded to the trial court with instructions that did not suggest that the court had much discretion in deciding the issue. But in *Penick v. Penick*, 783 S.W.2d at 197–98, the court repeatedly used the term "claim for reimbursement" and stressed the discretionary and equitable nature of the court's task.

the leased premises for the tenant. As part of the lease arrangement, the tenant agreed to spend an additional $5,000 on improvements, the cost of which would be absorbed by Robert and his brother in the form of rent abatements for the first seven months. This amounted to seven months of free rent worth $700 per month. After these first seven months, the monthly rental payments were sent to the bank and were applied to the $17,000 note.

The court granted Patsy reimbursement for half the amount of the payments and also for half the amount of the enhanced value. In its findings of fact and conclusions of law, the court stated that the judgment awarded reimbursement for one-half the following:

> c) L.N.B. [Laredo National Bank]—China Bo loan/note (separate property) amount paid on the note, from monthly $700.00 rentals to September 1987 is $10,500.00.... [$5,250.00]
>
> d) Enhanced value to China Bo realty, from improvements made—as per L.N.B. loan and China Bo monthly $700.00 rentals is $21,682.00.... [$10,841.00]

Robert attacks these findings and conclusions on various grounds. Because we sustain two of his complaints, we do not discuss the others.

■ Robert argues that the court awarded Patsy a double recovery by ordering reimbursement for every payment of community funds *and* reimbursement for the amount that those funds increased the value of the restaurant property. We agree that the judgment, considered in light of the court's findings and conclusions, awards a double recovery. The undisputed evidence establishes that the $5,000 spent by the tenant and the $17,000 borrowed from the bank were spent for improvements, and that the monthly $700 rental payments were applied first to repay the tenant and then to repay the bank. Under these circumstances, to grant reimbursement for both the payments and the increased value was to grant a double recovery to Patsy.

■ In addition, we hold that the court incorrectly treated all the rental payments as community property. Income from separate property is, of course, community property. But in this instance it is undisputed that half of the monthly rental income belonged to Robert's brother, who owned half of the restaurant. Accordingly, only the remaining half was community income, and to the extent that the court's reimbursement rulings rest on the premise that all the rental income was the community's, it is erroneous.

## C. Payments on Separate Debt.

Several years before the marriage, Robert mortgaged his separate property ranch to borrow $121,000. The court found that during the marriage Robert had made payments of $43,588.96 on that loan from community funds, and it awarded reimbursement of $21,794.48. Robert challenges the legal and factual sufficiency of that finding in point ten. There is evidence that Robert had always made the payments with proceeds from the sale of cattle, that his herd had increased from 70 in 1979 to 150 in 1986, that he had two sales in 1987 totaling 23–25 cows, and that he had made some payments from interest on his bank accounts. There is no evidence showing the size of the herd at the time of the marriage in 1983 or the amount of increase from then until the divorce in 1987.

■ We conclude that the cattle were correctly considered as community assets. "Property possessed by either spouse during or on dissolution of marriage is presumed to be community property." TEX.FAM.CODE ANN. § 5.02 (Vernon Supp.1990). To establish that property is separate requires clear and convincing evidence. *Id.* One can overcome the community presumption by tracing the assets on hand back to the original separate estate, but this burden is not discharged when the assets on hand have been so commingled as to defy resegregation and identification. *Estate of Hanau v. Hanau,* 730 S.W.2d 663, 667 (Tex.1987); *McKinley v. McKinley,* 496 S.W.2d 540, 543 (Tex.1973); *Tarver v. Tarver,* 394 S.W.2d 780, 783 (Tex.1965). In any event, the offspring born during the marriage became community cattle even

though their parents may have been separate property. *Blum v. Light,* 81 Tex. 414, 16 S.W. 1090, 1092 (1891); *Bobbitt v. Bass,* 713 S.W.2d 217, 220 (Tex.App.—El Paso 1986, writ dism'd); *Amarillo Nat'l Bank v. Liston,* 464 S.W.2d 395, 406 (Tex.Civ.App. —Amarillo 1970, writ ref'd n.r.e.). The newly-born community cattle were commingled with the original herd, and we find nothing in the record to indicate that they were segregated from each other. The court therefore correctly characterized the entire herd as community property.

But the evidence does not show how much of the payments on the ranch note came from the sale of cattle. The record shows sales of 25 cattle in 1987 and sales of unstated numbers in other years. There is vague testimony that unspecified amounts of money from the cattle sales and other community funds went to pay debts. Because this case must be retried for other errors, we need not decide whether there is sufficient evidence to support the finding that Robert spent $43,588.96 of community funds on the separate debt.

### D. Time and Effort Tending Cattle.

When Robert and Patsy met in 1979, he owned 70 head of cattle. The record does not show the size of this separate property herd at the time of their marriage in 1983. The court found that by the time of trial the herd had increased to 120 cattle, and that finding is supported by the evidence. The court awarded Patsy two different types of relief related to the cattle: a money judgment for her community interest in the cattle added to the herd during the marriage, and reimbursement for time and effort spent tending the herd. Specifically the court granted reimbursement for one-half of the following items: [6]

f) 30 head of cattle (Respondent had 70 at onset of parties' marriage), was increased by 50 head, after marriage, at $340.00 per head, $17,000 ... [$8,500.00]
g) $15,000.00—to reimburse Petitioner, for time and effort expended to enhance

Respondent, separate property (70 head cattle) ....... [$15,000.00]

In points eleven through sixteen Robert argues that there is legally and factually insufficient evidence (1) that Patsy's labors enhanced the value of the separate herd or (2) that the herd increased in the amount found by the court, and that (3) the court gave Patsy a double recovery by granting her reimbursement for her efforts in increasing the herd and then awarding her money for that very increase. We agree as to items one and three.

The record shows that beginning in 1979 Patsy assisted with the cattle by cooking meals for ranch hands, helping search for bulls to purchase, and helping feed and round up the cattle. There is no evidence of the value of these services or whether they exceeded what was necessary to maintain and preserve the herd.

As the party seeking reimbursement, Patsy had the burden to prove that she was entitled to it. *Jensen v. Jensen,* 665 S.W.2d 107, 110 (Tex.1984); *Vallone v. Vallone,* 644 S.W.2d 455, 459 (Tex. 1982). Under *Jensen,* 665 S.W.2d at 110, she was entitled to seek reimbursement for "the value of the time, toil and effort expended to enhance the separate estate other than that reasonably necessary to manage and preserve the separate estate, for which the community did not receive adequate compensation." Patsy's proof in this case fails because there is no indication that her efforts did more than was required to maintain the herd. Nor is there evidence of the value of her uncompensated labor. While mathematical certainty is not required, there must be some proof of value. *See Rogers v. Rogers,* 754 S.W.2d 236, 239 (Tex.App.—Houston [1st Dist.] 1988, no writ); *cf. Logan v. Barge,* 568 S.W.2d 863, 869 (Tex.Civ.App.—Beaumont 1978, writ ref'd n.r.e.) (generally, proof of value is required).

Moreover, to the extent that her work did increase the herd, the new cattle were community property. *Blum v. Light,* 81

6. The court's Findings of Fact and Conclusions of Law characterize item "f" as reimbursement, but it seems clearly to be a dollar award for an interest in an existing community asset on hand at dissolution of the marriage, and we treat it as such.

Tex. 414, 16 S.W. at 1092; *Bobbitt v. Bass,* 713 S.W.2d at 220; *Amarillo Nat'l Bank v. Liston,* 464 S.W.2d at 406. Thus her efforts did not increase the number of cattle in Robert's separate estate; at most her efforts helped develop new cattle, which were community assets that the court divided in its discretion. For all of these reasons, it was error to grant reimbursement for Patsy's time and effort tending the cattle.

■ Robert complains that the court's money award to Patsy for her interest in the community cattle on hand at the time of divorce is unsupported by the evidence. We overrule this contention. All property on hand at the time of divorce is presumed to be community property. TEX.FAM. CODE ANN. § 5.02 (Vernon Supp.1990). The court's implied finding that Robert did not rebut this presumption is well within the evidence. There was testimony from Robert's neighbor and former cowhand that he had seen the herd increase by 50 or 60 per cent. An expert witness gave testimony of the value of the steers, bulls, calves, and heifers based on photographs in evidence. Robert attacks this evidence because it dealt with gross numbers and average weights and prices and did not proceed animal by animal. We are cited no authority that would require such evidence and are aware of none. We hold that Robert did not rebut the presumption that the cattle were community property.

### E. Delay Rental.

In point seventeen, Robert complains of the court's treatment of an $18,000 delay rental that he received from a separate property oil lease. It is not clear whether the court meant to divide an existing community asset, or to award reimbursement because the $18,000 was spent to preserve or pay for Robert's separate property. Because the property must again be divided on retrial, we simply call the matter to the trial court's attention.

### II. MISCELLANEOUS ISSUES.

■ In point eighteen Robert asserts that the court should not have awarded interest on the amounts granted as reimbursement. The judgment simply said that interest would accrue on the money judgment in favor of Patsy. That part of the judgment was correct. Upon retrial if the court renders a money judgment for amounts awarded as reimbursement, its judgment should again bear interest at the legal rate as the present judgment did. *See* TEX.REV.CIV.STAT.ANN. art. 5069–1.05 (Vernon Supp.1990).

In points nineteen through twenty-one, Robert assigns as error the court's creation of an equitable lien on his separate property to secure payment of the money judgment for amounts reimbursed and for attorney's fees. The law on this point is not entirely clear. In *Jensen v. Jensen,* after holding that Mrs. Jensen was entitled to claim reimbursement, the supreme court said that "if [upon retrial] the right to reimbursement is proved, a lien shall not attach to Mr. Jensen's separate property shares. Rather, a money judgment may be awarded." 665 S.W.2d at 110. The court cited *Burton v. Bell,* 380 S.W.2d 561 (Tex. 1964), which had held that such a right to reimbursement "is only a claim for money and return of funds and not a right, title or interest in the land." *Id.* at 564. Since *Jensen* two cases have held that an equitable lien may be imposed on the enhanced separate property to secure payment of the judgment for reimbursement. *Kamel v. Kamel,* 760 S.W.2d 677, 680–81 (Tex.App.—Tyler 1988, writ denied) (*Jensen* limited to personalty); *Smith v. Smith,* 715 S.W.2d 154, 160 (Tex.App.—Texarkana 1986, no writ) (*Jensen* limited to stock involving "key man concept"). In addition, shortly after *Jensen* the supreme court denied review of a comparable holding. *See Cook v. Cook,* 665 S.W.2d 161, 165 (Tex. App.—Fort Worth 1983, writ ref'd n.r.e.).

We leave this issue to the trial court upon remand. We note, however, that ordinarily the better practice may be to award other community assets to the extent that they exist in sufficient quantity and value. *See Dakan v. Dakan,* 125 Tex. 305, 83 S.W.2d 620, 629 (1935).

In points 22–24 Robert challenges the court's assessment of $18,000 in attorney's fees. Robert's argument simply quibbles with the court's decision to grant attorney's fees and argues that the judgment gave Patsy enough to meet her needs. The trial court may award attorneys' fees in making a just and right division of the community property. *See Murff v. Murff,* 615 S.W.2d 696, 699 (Tex. 1981). We hold that the amount of attorney's fees awarded was well within the evidence.

In point 25 Robert contends that the court erred in awarding Patsy his 1981 Lincoln. We sustain this point because the undisputed evidence shows that Robert bought the car new in 1981, two years before the marriage. Under the inception-of-title rule, the Lincoln is Robert's separate property, even though it may have been paid for with community funds and its final title acquired during the marriage, which might simply entitle Patsy to reimbursement. *See Jensen v. Jensen,* 665 S.W.2d at 109. As Robert's separate personalty, the Lincoln could not be awarded to Patsy. *Cameron v. Cameron,* 641 S.W.2d 210 (Tex.1982).

In points 26 and 27 Robert contends that the court erred in awarding various items of personalty to Patsy without specifying their value and without sufficient evidence that they were community property. The personalty on hand at the time of trial was, of course, presumed to be community property. To rebut that presumption, Robert had the burden to convince the court with clear and convincing evidence that the contested items were his separate property. TEX.FAM.CODE ANN. § 5.02 (Vernon Supp.1990). Because he did not meet his burden the court correctly characterized the personalty as community assets.

In his supplemental request for findings of fact, Robert asked the court to assign a specific value to each item of personal property awarded to Patsy, which the court failed to do. We hold that the court was not required to make the specific findings. We are not aware of any authority that courts must place a value on every item of personalty in the community estate, and we decline to originate such a rule. Upon proper request, trial courts must make findings only on controlling or ultimate issues, not evidentiary ones. *Hazelwood v. Jinkins,* 580 S.W.2d 33, 35–36 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ); *Harding v. Harding,* 461 S.W.2d 235, 236 (Tex.Civ.App.—San Antonio 1970, no writ); 4 R. McDONALD, TEXAS CIVIL PRACTICE § 16.05, at 8–9 (1984 rev.) Courts have considerable discretion in determining where to draw the line between detail and generality in their findings of fact, and we find no abuse of that discretion here. Findings of fact are analogous to jury questions, which are submitted in broad form. *See* TEX.R.CIV.P. 277. It would be strange indeed to require judges to make findings in minute detail while requiring jury questions to be framed broadly.

In point 28 Robert argues that the court erred in not giving him credit for temporary support that he paid belatedly after being held in contempt. We find nothing in the judgment that says one way or the other whether the court took this into account in making its property division. The Findings of Fact and Conclusions of Law indicate that Robert still owed the temporary support payments, while the statement of facts shows that he had paid them. We trust that upon retrial of the property division the court will not assess this debt against Robert if the evidence in fact shows that he has paid it.

Point 29 raises an issue that is unnecessary to our decision and unlikely to arise on retrial.

For the reasons stated, the property-division portion of the judgment, including issues of reimbursement, is reversed and remanded for a new trial. In all other respects, the judgment is affirmed.