# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE MATTER OF THE* | § | *APPEAL FROM THE* |
| *MARRIAGE OF RONALD WELLS* | § | *COUNTY COURT AT LAW* |
| *AND DEBORAH WELLS* | § | *VAN ZANDT COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Deborah Wells appeals from a final decree of divorce in which the trial court granted Ronald Wells' petition for divorce and divided the parties' marital estate. Deborah presents three issues on appeal. We affirm the portion of the decree granting a divorce, and reverse and remand for a new trial on the property division and related claims.

## BACKGROUND

Ronald and Deborah were married on January 19, 1982. The couple separated in August or September 2014. Ronald filed for divorce on December 7, 2018, and Deborah counter-petitioned for divorce on October 15, 2019. The couple had children who are now adults. The trial court held a bench trial and signed a final decree of divorce on June 11, 2021, and subsequently signed findings of fact and conclusions of law. The trial court also signed temporary orders concerning the parties' use and possession of real estate pending appeal on November 8, 2021. The trial court granted the divorce and divided the parties' property. The trial court confirmed separate property for both parties.

The primary subject of this appeal is the trial court's reimbursement claims awarded to Ronald for the community estate's debt reduction, real estate tax payments, capital and noncapital improvements, and uncompensated time, toil, talent, and effort (TTT&E) for the benefit of Deborah's separate property. Specifically, Deborah owns two tracts of irrigated farmland as her separate property in Cochran County, Texas, of 177 acres and 160 acres

(Cochran County property), operating as B&W Farms, which she inherited. Deborah also owns separate property in Van Zandt County (Van Zandt County property)—a three-quarters interest in four tracts of land subject to three separate promissory notes (the Musselwhite, McCrae, and McGehee notes), which Deborah alleges are subject to a coownership buy-sell agreement that requires one owner to make an offer to another owner, and the offeree can accept the offer or buy the offeror's property for that price. Deborah acquired the Van Zandt County property with relatively small down payments from her separate funds. Ronald, a practicing attorney with his own law practice, has made all the payments on the Van Zandt County property since they initially purchased it. Deborah has a law license and a master's degree but left the corporate workforce to raise their children. Since their separation, Deborah has worked as a flight attendant for the military.

Ronald has lived at the Van Zandt County property since the couple's separation. The Van Zandt County property is 236 acres, which contains an approximately 30-acre lake. Deborah purchased the property initially in hopes to operate it as a tree farm and to pass along eventually to their children. The Van Zandt County property has a home that the parties renovated and repaired through the years. Moreover, Ronald made several notable improvements to the property, including, among other things described later in this opinion, the construction of a large barn with living quarters, extensive repairs to the lake's spillway and dam, along with repairs and modifications to the boathouse, dock, and pier. Deborah visits the property infrequently, and has lived at an apartment, with friends, or in her vehicle since the couple's separation.

The trial court awarded Ronald equitable reimbursement for one-half of the community estate's following eight equitable reimbursement claims that are the primary subject of this appeal:

1. $95,435.00 – reduction of principal indebtedness on the Musselwhite promissory note.
2. $37,887.00 – reduction of principal indebtedness on the McCrae promissory note.
3. $44,000.00 – reduction of principal indebtedness on the McGehee promissory note.
4. $11,315.00 – payment of real estate property taxes for the Van Zandt County property subject to the above three notes.
5. $4,166.00 – payment of real estate taxes for the Cochran County property.
6. $68,582.50 – payment for several itemized capital improvements "at cost."

2

7.  $9,284.50 – payment for several itemized noncapital improvements "at cost."

8.  $100,000.00 – payment for both enhancement in value to the Van Zandt County property "above and beyond the reimbursement for actual costs/expenses incurred by the community estate," commingled with Ronald's *Jensen* claim to compensate him for his "time, effort, skill and abilities expended to enhance [Deborah's] separate property, resulting in the substantial increase in appraised and market value [of the Van Zandt County property]."[1]

In relevant part, the trial court thus awarded Ronald as part of its judgment $366,504.00, ordering Deborah to execute a real estate lien note and deed of trust in that amount and secured by an equitable reimbursement lien on the Van Zandt County property. This amount reflects Ronald's half of the community estate's total reimbursement claims related to the Van Zandt County property. The trial court also awarded $4,166.00 for the remaining reimbursement claim relating to Ronald's payment of real estate taxes on the Cochran County real estate, and ordered that Deborah execute a promissory note and deed of trust for that amount.[2] The trial court also granted Ronald continued use and possession of the residence located on Deborah's separate property in Van Zandt County. This appeal followed.

## EQUITABLE REIMBURSEMENT

In her first issue, Deborah contends that the trial court abused its discretion in its award and valuation of all eight of Ronald's equitable reimbursement claims.

### Standard of Review

We review a trial court's award of reimbursement under an abuse of discretion standard. *Matter of Estate of Baker*, 627 S.W.3d 523, 526–27 (Tex. App.—Waco 2021, no pet.). Abuse of discretion is when a trial court's decision is arbitrary, unreasonable, and without reference to guiding principles. *In re A.L.M.-F.*, 593 S.W.3d 271, 282 (Tex. 2019). If there is some evidence of substantive and probative character to support the trial court's decision, there is no

---

[1] *See, e.g., Jensen v. Jensen*, 665 S.W.2d 107, 109-10 (Tex. 1984) (describing parameters for reimbursement claim for spouse's time, toil, talent, and effort (TTT&E) spent enhancing the other spouse's separate property).

[2] These amounts were awarded separately and secured differently because they relate to different tracts of Deborah's separate property located in different counties.

abuse of discretion. *Ayala v. Ayala*, 387 S.W.3d 721, 726 (Tex. App.—Houston [1st Dist.] 2011, no pet.). Great latitude must be given to the trial court in applying equitable principles to value a claim for reimbursement. *Penick v. Penick*, 783 S.W.2d 194, 198 (Tex. 1988). An equitable claim for reimbursement is not merely a balancing of the ledgers between the marital estates. *Id.* The discretion to be exercised in evaluating a claim for reimbursement is equally as broad as that discretion subsequently exercised by the trial court in making a "just and right" division of the community property. *Id.* However, a trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). Accordingly, a trial court has no discretion in determining what the law is or in applying the law to the facts. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992). Although not independent grounds of error, the legal and factual sufficiency of the evidence are relevant factors in assessing whether the trial court abused its discretion. *In re Marriage of McCoy*, 488 S.W.3d 430, 433 (Tex. App.—Houston [14th Dist.] 2016, no pet.).

In an appeal from a judgment after a bench trial, we accord the trial court's findings of fact the same weight as a jury's verdict. *Milton M. Cooke Co. v. First Bank & Trust*, 290 S.W.3d 297, 302 (Tex. App.—Houston [1st Dist.] 2009, no. pet.); *see Brown v. Brown*, 236 S.W.3d 343, 347 (Tex. App.—Houston [1st Dist.] 2007, no pet.). Unchallenged findings of fact are binding on an appellate court unless the contrary is established as a matter of law or there is no evidence to support the finding. *Walker v. Anderson*, 232 S.W.3d 899, 907 (Tex. App.—Dallas 2007, no pet.); *see McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986); *Mullins v. Mullins*, 202 S.W.3d 869, 874, 876-77 (Tex. App.—Dallas 2006, pet. denied). However, when an appellant contests a trial court's findings of fact, an appellate court reviews those fact findings by the same standards it uses to review the sufficiency of the evidence to support a jury's findings. *See Pulley v. Milberger*, 198 S.W.3d 418, 426 (Tex. App.—Dallas 2006, pet. denied).

To determine whether legally sufficient evidence supports a challenged finding, we must consider evidence that favors the finding if a reasonable factfinder could consider it, and we must disregard evidence contrary to the challenged finding unless a reasonable factfinder could not disregard it. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We sustain a legal insufficiency, or "no evidence," point when the record demonstrates (1) a complete absence of

4

evidence of a vital fact; (2) that the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) that the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) that the evidence conclusively establishes the opposite of the vital fact. *Id.* at 810. More than a scintilla of evidence exists when the evidence supporting the finding, as a whole, rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact. *Driskill v. Ford Motor Co.*, 269 S.W.3d 199, 203 (Tex. App.—Texarkana 2008, no pet.) (citing *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003)).

We review conclusions of law by the trial court de novo. *Brown*, 236 S.W.3d at 348. "Failing to correctly apply the law is an abuse of discretion." *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 694 (Tex. 2007). We affirm the judgment if it can be upheld on any legal theory supported by the evidence. *In the Interest of W.E.R.*, 669 S.W.2d 716, 717 (Tex. 1984) (per curiam).

**General Equitable Reimbursement Principles**

Claims for reimbursement are generally governed by Texas Family Code Section 3.402 of the Family Code. *See* TEX. FAM. CODE ANN. § 3.402 (West Supp. 2021). "The rule of reimbursement is purely an equitable one." *Vallone v. Vallone*, 644 S.W.2d 455, 458 (Tex. 1982) (citing *Colden v. Alexander*, 141 Tex. 134, 171 S.W.2d 328 (1943)); *see also* TEX. FAM. CODE ANN. § 3.402(b) (court shall resolve claims for reimbursement by using equitable principles). A right of reimbursement arises when funds of one estate are used to benefit another estate without itself receiving some benefit. *Vallone*, 644 S.W.2d at 459. "The right of reimbursement is not an interest in property or an enforceable debt, per se, but an equitable right which arises upon dissolution of the marriage through death, divorce or annulment." *Id.* at 458-59. The party claiming the right of reimbursement has the burden of pleading and proving that the expenditures and improvements were made and that they are reimbursable. *Id.* at 459.

Specifically, to prove a claim for reimbursement, the spouse seeking reimbursement must establish the following: (1) that a contribution was made by one marital estate to another, (2) that the contribution was reimbursable, and (3) the value of the contribution. *Id.*; *Richardson v. Richardson*, 424 S.W.3d 691, 700 (Tex. App.—El Paso 2014, no pet.); *Gutierrez v. Gutierrez*,

791 S.W.2d 659, 665 (Tex. App.—San Antonio 1990, no writ). Because of a reimbursement claim's equitable nature, the trial court considers all facts pertaining to the transaction in making its determination, and we reverse a trial court's decision only when it abuses its discretion. *Penick*, 783 S.W.2d at 197.

Texas Family Code Section 3.402 codified many reimbursement claims. The Legislature has not codified all the common law grounds for reimbursement, but the statute should not be read as the exclusive list of reimbursable claims. *See Nelson v. Nelson*, 193 S.W.3d 624, 632 (Tex. App.—Eastland 2006, no pet.); *see also* TEX. GOV'T CODE ANN. § 311.005(13) (West 2013) (stating that "includes" is not a term of limitation, and no presumption of exclusivity arises). Therefore, a claim for reimbursement recognized at common law is generally still viable as long as it is not specifically classified as non-reimbursable under the current reimbursement statutory scheme. *See* TEX. FAM. CODE ANN. § 3.409 (West 2006) (listing non-reimbursable claims). This interpretation is reinforced by the equitable nature of reimbursement claims and the mandate that the trial court balance all the facts, circumstances, and equities of the particular matter before it. *See id.* § 3.402(b); *Penick*, 783 S.W.2d at 197.

### Equitable Reimbursement for Capital Improvements

The statute authorizes an equitable reimbursement claim when one marital estate makes capital improvements to property of another marital estate other than by incurring debt. TEX. FAM. CODE ANN. § 3.402(a)(8). A claim for reimbursement for funds expended by an estate for improvements to another estate is to be measured by the enhancement in value to the benefited estate by reason of the improvements. *See Anderson v. Gilliland*, 684 S.W.2d 673, 675 (Tex. 1985). The enhancement value is not determined by the actual costs expended by the community estate. *Id.* To be reimbursable, a property's enhanced value must be "attributable to the community expenditures." *In re Marriage of McCoy*, 488 S.W.3d at 435 (citing *Zagorski v. Zagorski*, 116 S.W.3d 309, 321 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)). "The enhanced value is determined by the difference between the fair market value before and after improvements made during the marriage." *Id.* (citing *Rogers v. Rogers*, 754 S.W.2d 236, 239 (Tex. App.—Houston [1st Dist.] 1988, no writ)). Evidence of the property value without improvements and the value with improvements is sufficient to sustain a finding as to the amount of the enhancement value. *Id.* (citing *Kimsey v. Kimsey*, 965 S.W.2d 690, 703 (Tex. App.—El Paso 1998, pet. denied)).

The trial court, in its final decree of divorce, awarded Ronald reimbursement in relevant part as follows:[3]

Reimbursement Claim No. 6:

IT IS ORDERED that Ronald Wells is awarded the sum of $68,582.50 reflecting one-half of the community estate's reimbursement claim for payment of items *at cost* for capital improvements to the real property situated at VZCR 1117, Fruitvale, Texas, confirmed as [Deborah's] separate property herein, and secured by an equitable lien as set out above in award of property to [Ronald].[4]  Items *at cost* for capital improvements to said property include the following:

a.  Barn ($69,650);
b.  Sprinkler system and pump ($5,783);
c.  Metal roof and tree removal in preparation for new roof ($12,000);
d.  Bridge and spillway ($20,000);
e.  Pine trees ($2,750);
f.  Culvert pipes ($2,000);
g.  Cell booster and supplies ($700);
h.  New dock ($1,600);
i.  Electrical work on new dock ($3,300);
j.  New walkway for dock ($500);
k.  Front fencing ($4,000);Enclosed porch ($3,774);
l.  Grass planting ($1,400);
m.  Road work (rock, etc.) ($2,000);
n.  New gate ($208); and
o.  ATV trails-rental of dozer/etc. ($7,500).

The trial court, in its divorce decree and findings of fact and conclusions of law, recites that the award for capital improvements is based on the cost of each expenditure, and the amounts are half of the total cost identified in the decree and findings.  The amounts for each expenditure correspond to the testimony and other evidence of each item's cost as opposed to the enhancement in value provided by the improvement.  Reimbursement for capital improvements based on cost is improper, and as we have stated, the trial court has no discretion to misapply the law.  *See Anderson*, 684 S.W.2d at 675; *Matter of Estate of Baker*, 627 S.W.3d at 527; *In re Marriage of McCoy*, 488 S.W.3d at 435.

---

[3] Here, Deborah challenged all the trial court's pertinent findings of fact and conclusions of law related to Ronald's reimbursement claims.  In relevant part, these findings and conclusions echo the trial court's divorce decree.

[4] The Texas Family Code authorizes "[o]n dissolution of a marriage, the court may impose an equitable lien on the property of a benefited marital estate to secure a claim for reimbursement against that property by a contributing marital estate."  TEX. FAM. CODE ANN. § 3.406(a) (West Supp. 2021).

7

Ronald nevertheless contends that we should read the award in reimbursement claim eight in conjunction with the reimbursement award for capital improvements in claim six. The trial court ordered in relevant part as follows:

Reimbursement Claim No. 8:

IT IS ORDERED that Ronald Wells is awarded the sum of $100,000 reflecting one-half of the community estate's reimbursement claim for enhancement in value to the real property situated at VZCR 1117, Fruitvale, Texas, confirmed as Respondent's separate property herein, above and beyond the reimbursement for actual costs/expenses incurred by the community estate above, and including the time, effort, skill and abilities expended to enhance Respondent's separate property, resulting in the substantial increase in appraised and market value of the same, and secured by an equitable lien as set out above in award of property to Petitioner.

Ronald contends that we may read both reimbursement claims together and conclude that each capital improvement enhanced the value of the property at the full amount of cost plus an extra $200,000, and awarded Ronald half of that amount, or $100,000 as reimbursement "above and beyond . . . the actual costs/expenses incurred by the community estate." We decline this invitation.

First, we note that the trial court identified them as separate reimbursement claims, one claim for capital improvements awarded at their cost value, and a second reimbursement claim for enhancing the value of the property above and beyond costs. Second, if we were to adopt Ronald's position, reimbursement claim eight commingles the claim for capital improvements with Ronald's *Jensen* claim that, which as we will discuss later in this opinion, has its own separate and distinct means of valuation—namely, the value of the uncompensated labor as opposed to the enhancement in value to the property. *See, e.g., Jensen v. Jensen*, 665 S.W.2d 107, 109-10 (Tex. 1984) (describing elements for reimbursement claim for spouse's TTT&E spent enhancing the other spouse's separate property); *Lifshutz v. Lifshutz*, 199 S.W.3d 9, 28–29 (Tex. App.—San Antonio 2006, pet. denied); *Gutierrez*, 791 S.W.2d at 665; *Rogers*, 754 S.W.2d at 239.

Ronald and Steve Grant, a realtor, attempted to provide testimony of enhanced value on some of the more expensive and extensive capital improvements. For example, they testified that the value of the property was enhanced by $50,000 for the spillway and dam work. Ronald testified that the repair cost $20,000, which matches the exact amount the trial court found to be

"at cost."[5]  Furthermore, Ronald testified that he added a large barn that cost $69,650 to build, which corresponds to exactly the "cost" identified by the trial court as a capital improvement, half of which the trial court reimbursed to Ronald as his community share.  Ronald and Grant testified that they believed the barn added $80,000 in value to the Van Zandt County property.  None of these amounts of added value correspond to any of the trial court's actual reimbursement amounts in the decree or findings of fact and conclusions of law.  Instead, the trial court awarded Ronald half the amount as his share of the community estate for each itemized improvement "at cost."

Grant had inspected the property and prepared a report and marketing recommendations in 2015, in preparation for a potential sale, recommending marketing the property in a range between $1,575,000 and $1,675,000.  In 2018, he updated that report, proposed a marketing plan for the property, and suggested a list price of $1,775,625.  Later, Grant visited the property again in preparation for his divorce-trial testimony and valued the property at $1,953,775.  He testified that these were not formal appraisals.  Ronald argues that his testimony of the value, coupled with Grant's testimony, provides sufficient evidence to satisfy the mandate in Section 3.402 that improvements to real property be measured by the difference in value before and after the improvement.  We disagree.

Nothing in the trial court's divorce decree or findings of fact and conclusions of law that were actually awarded corresponds to these values provided by Ronald and Grant.  Contrary to Ronald's suggestion, since the trial court made express findings of fact and conclusions of law explaining how it arrived at the reimbursement valuations on capital improvements, we may not imply such a finding in support of the court's award, especially since it would be unsupported by the record.  Cf. *Zamiatowski v. Zamiatowski*, No. 14-12-00478-CV, 2013 WL 1803604, at *2 (Tex. App.—Houston [14th Dist.] Apr. 30, 2013, no pet.) (mem. op.) (holding in absence of findings of fact and conclusions of law, appellate court could imply finding that amount corresponding to cost of improvement was supported as enhanced value, whereas in present case, court expressly issued findings of fact and conclusions of law awarding capital improvements "at cost").

---

[5] We note that the amount actually paid by Ronald for this project was not adjusted for the percentage of ownership.  Ronald testified that the co-owner of the remaining one-quarter interest probably paid his portion of the work according to his percentage of ownership.

The present case is also to be distinguished from the testimony the court found sufficient in *Matter of Estate of Baker*, 627 S.W.3d at 527-28. There, a real estate agent testified to the value of the land without the improvements and the value of the land with the improvements. *Id.* The trial court in *Baker* took the difference in value, and reimbursed the wife for half of this amount, representing her half of the community estate's capital improvements to the property. *Id.* The reimbursement amount corresponded to this testimony, which is different than in the present case, where Ronald and Grant's testimony on the value of the land and the improvements bears no resemblance to the amounts actually awarded to Ronald, especially since the trial court expressly awarded Ronald reimbursement for the capital improvements "at cost." That is, the values provided by Grant did not provide fair market value of the property with and without any improvements or tie any of his valuation testimony to all the improvements made by Ronald.

These facts actually buttress Deborah's argument that the court awarded Ronald reimbursement based on the cost of the improvement. The trial court does not have discretion as to what the law is or to incorrectly apply it. The proper standard is the difference in market value of the property prior to the improvements from the value of the property with the enhancements. Cost is an inappropriate measure. The trial court clearly awarded Ronald his reimbursement claim for capital improvements based on cost. Accordingly, since it applied the incorrect standard, we hold that the trial court abused its discretion on reimbursement claim six for capital improvements.

### Time, Toil, Talent, and Effort Reimbursement Claim

During marriage, a spouse's time, toil, talent, and effort (TTT&E) belongs to the community estate. *See Jensen*, 665 S.W.2d at 109–10; *Vallone*, 644 S.W.2d at 458. Under the statutory reimbursement scheme in the Texas Family Code, a claim for reimbursement arises when the community estate receives inadequate compensation for a spouse's TTT&E from a business under that spouse's control and direction. TEX. FAM. CODE ANN. § 3.402(a)(2). Here, Ronald's TTT&E *Jensen* claim arises not necessarily from a business under his control or direction.

But at common law, inadequate compensation received by the community estate for a spouse's TTT&E to enhance either spouse's separate property was reimbursable to the extent that the TTT&E exceeded what was reasonably necessary to preserve and maintain the separate property. *See Jensen*, 665 S.W.2d at 110. Unlike the statutory reimbursement scheme, common

law *Jensen* claims are not limited to situations where the inadequate compensation comes from a business entity controlled and directed by the inadequately compensated spouse. *See, e.g., **Gutierrez***, 791 S.W.2d at 665 (wife brought reimbursement claim based on her TTT&E used to enhance husband's separate property ranch). As we have discussed, common law reimbursement claims that have not been statutorily classified as non-reimbursable are generally still viable if the equities of the facts and circumstances of a particular case warrant such consideration and award. *See* TEX. FAM. CODE ANN. § 3.409 (not listing traditional *Jensen* claims as non-reimbursable claim); *see also **Bell v. Bell***, No. 12-04-00244-CV, 2005 WL 1538275, at *7 (Tex. App.—Tyler June 30, 2005, no pet.) (mem. op.) (community was reimbursed for work wife did on business that was 49% owned by husband).

We have already discussed Ronald's reimbursement claim eight and concluded that it is not to be read together with reimbursement claim six pertaining to reimbursement for capital improvements. Also in reimbursement claim eight, the trial court awarded Ronald $100,000 for one-half of the community's "time, effort, skill and abilities expended to enhance [Deborah's] separate property, resulting in the substantial increase in appraised and market value of the same . . . ." In other words, the trial court attempted to compensate Ronald for his TTT&E under a common law *Jensen* claim.

To support such a claim, Ronald must prove (1) the value of the uncompensated TTT&E and (2) that this value exceeded what was reasonably necessary to manage and preserve the separate property. ***Gutierrez***, 791 S.W.2d at 665. Upon satisfying these elements, Ronald is entitled to recover only the value of the uncompensated TTT&E, but not the enhanced value of the separate property. ***Lifshutz***, 199 S.W.3d at 28–29; ***Rogers***, 754 S.W.2d at 239. In other words, a party seeking reimbursement should prove that the value of the spouse's separate property was enhanced by the uncompensated TTT&E, typically by comparing the value of the property before and after the TTT&E, but the remedy is not the amount of the enhancement. *See, e.g., **Garza v. Garza***, 217 S.W.3d 538, 547 (Tex. App.—San Antonio 2006, no pet.) (holding wife had no claim for reimbursement because she did not show that increase in restored car's value was due to husband's TTT&E); ***Gutierrez***, 791 S.W.2d at 665 (holding wife had no claim for reimbursement because she did not prove that value of husband's separate interest in cattle herd was enhanced by her TTT&E). Instead, the appropriate measure is the value of the

11

uncompensated labor. ***Lifshutz***, 199 S.W.3d at 29 (holding wife failed to prove ***Jensen*** claim because she did not present evidence of value of husband's uncompensated time and labor).

Here, as explained in the divorce decree and relevant findings of fact and conclusions of law, the trial court incorrectly awarded the ***Jensen*** claim amount based on the enhancement in value to the property as opposed to the value of the labor itself. Specifically, the trial court recited that the $100,000 was valued as representing the "enhancement in value" of the Van Zandt County property "above and beyond the reimbursement for actual costs/expenses incurred by the community estate." As we have stated, a trial court has no discretion in determining what the law is or in applying the law to the facts. *See **Walker***, 827 S.W.2d at 840 (Tex. 1992). Since the trial court misapplied the legal standard in valuing the ***Jensen*** claim in reimbursement claim eight, we hold that it abused its discretion in assessing this award based on this measure.

**Deborah's Right to Offset**

Deborah also argues as part of her first issue that the trial court failed to account for amounts that should offset Ronald's reimbursement claims.

The trial court's divorce decree and findings of fact and conclusions of law make no mention of Deborah's offset claim. Ronald relies on Texas Family Code Section 3.402 and its prohibition of offsetting an equitable reimbursement claim for use and enjoyment of a primary or secondary residence. *See* TEX. FAM. CODE ANN. § 3.402(c). Section 3.402(c) provides:

> Benefits for the use and enjoyment of property may be offset against a claim for reimbursement for expenditures to benefit a marital estate, except that the separate estate of a spouse may not claim an offset for use and enjoyment of a primary or secondary residence owned wholly or partly by the separate estate against contributions made by the community estate to the separate estate.

*Id.*

While we agree that the statute prevents an offset arising from the use and enjoyment of the property, that is not the only type of offset. The statute requires that the trial court "shall resolve a claim for reimbursement by using equitable principles, including the principle that claims for reimbursement may be offset against each other if the court determines it to be appropriate." *Id.* § 3.402(b). As we have explained, the statute does not foreclose the trial court's consideration of other offsetting benefits to a spouse's reimbursement claim recognized at common law. "The outright rejection of offsetting benefits is inconsistent with the equitable nature of a claim for reimbursement." ***Penick***, 783 S.W.2d at 197. Deborah argues that after they separated in 2014, each spouse filed their own taxes separately. According to Deborah,

12

Ronald took advantage of various tax benefits lowering his tax liabilities related to the property. Texas courts have recognized that any tax benefits received by the contributing estate could be offset against a reimbursement claim. *See id.* at 197-98; ***Phillips v. Phillips***, 296 S.W.3d 656, 665 (Tex. App.—El Paso 2009, pet. denied); *see also **Chacon v. Chacon***, 222 S.W.3d 909, 911–12 (Tex. App.—El Paso 2007, no pet.) (describing that dollar amount deducted from wife's paychecks for husband's IRS debt for failed business ventures was reimbursed in full).

Ronald and Deborah attempted to operate the Van Zandt County property as a tree farm, but never realized a profit. Deborah points to the aforementioned tax benefits and deductions Ronald took on his tax returns related to this endeavor for which the trial court did not account and offset. Moreover, Deborah points to various tax liabilities that the trial court failed to consider in evaluating Ronald's reimbursement claims. The trial court made a conclusion of law stating that each party shall bear the responsibility for the community debts and it expressly refused to consider an order dividing any tax liabilities that could offset Ronald's reimbursement claims. It appears from the record that the trial court did not consider any offsetting benefits Ronald and/or the community estate received related to Deborah's separate property. Accordingly, we conclude that the trial court abused its discretion in this regard. *See **Penick***, 783 S.W.2d at 197; ***Phillips***, 296 S.W.3d at 665; ***Chacon***, 222 S.W.3d at 911–12.

## Remedy: Remand for New Trial on All Property Division Issues

Because neither spouse has challenged or otherwise complained of the dissolution of the marriage, we affirm the judgment to the extent that it grants a divorce. *See **Roberts v. Roberts***, 999 S.W.2d 424, 442 (Tex. App.—El Paso 1999, no pet.); *see also **Roach v. Roach***, 672 S.W.2d 524, 532 (Tex. App.—Amarillo 1984, no writ) (holding that while issue of divorce cannot be severed from a parties' estate division in the trial court, where neither party attacks the decretal portion of the judgment granting divorce, we may affirm divorce and reverse and remand property division).

When the appellate court finds reversible error in the property division, as in the present case, it must reverse and remand the entire division for the trial court's consideration. *See **Jacobs v. Jacobs***, 687 S.W.2d 731, 733 (Tex. 1985); ***Gutierrez***, 791 S.W.2d at 661 (following ***Jacobs*** and holding that error in amount of reimbursement award led to a reversal and remand of the entire property division). A just and right division of community property is the exclusive province of the trial court because appellate courts have no power to render their own just and

right division. *Jacobs*, 687 S.W.2d at 733; *McKnight v. McKnight*, 543 S.W.2d 863, 866 (Tex. 1976); *Puntarelli v. Peterson*, 405 S.W.3d 131, 136 (Tex. App.—Houston [1st Dist.] 2013, no pet.). As a result, the appellate court cannot reverse and render judgment on the property division, nor can it affirm part and remand part of the property division. *See Jacobs*, 687 S.W.2d at 733; *McKnight*, 543 S.W.2d at 867.

**Remaining Property Division Issues**

Ronald's reimbursement claims one through three respectively pertain to the community's payment of principal debt reduction for the Musselwhite, McCrae, and McGehee notes on the Van Zandt County property.[6] These types of payments are generally recognized as reimbursable under the statute and common law. *See* TEXAS FAM. CODE ANN. § 3.402(a)(3)-(7); *see also* ***Barras v. Barras***, 396 S.W.3d 154, 176–77 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (holding value of reimbursement for payments to reduce principal of secured debt is typically equal to the amount of the payment).

Similarly, Ronald's reimbursement claims four and five represent the court's award of reimbursement to Ronald for the community's payments of real estate property taxes on the Van Zandt County and Cochran County properties as Deborah's separate property. The payment of real estate property taxes by the community on behalf of a spouse's separate estate is reimbursable at common law. *See **Phillips***, 296 S.W.3d at 665; ***McDaniel v. McDaniel***, No. 03-03-00521-CV, 2004 WL 524475, at *4 (Tex. App.—Austin Mar. 18, 2004, no pet.) (mem. op.) (holding wife's payment of tax debt was reimbursed dollar-for-dollar). To prove a claim for reimbursement, the petitioner must establish the value of the contribution. ***Richardson***, 424 S.W.3d at 700; ***Gutierrez***, 791 S.W.2d at 665; *see **In re Marriage of O'Brien***, 436 S.W.3d 78, 84 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Value does not need to be established to a mathematical certainty, but some evidence of value must be presented. ***Gutierrez***, 791 S.W.2d at

---

[6] The trial court, in finding of fact 13.c., stated that "[c]ommunity funds were expended to enhance, debt service, or otherwise benefit [Deborah's] separate property confirmed herein, to wit: . . . [t]he sum of $88,000.00 for the debt reduction of the 'McCrae Note' concerning the property on VZCR 11117, Fruitvale, Texas confirmed to [Deborah]." This finding of fact contains a clerical error. It is apparent from the face of the record that the trial court concluded that this amount of debt service actually related to the "McGehee Note," as the trial court correctly noted in its final divorce decree. That is, the trial court's final decree of divorce correctly awarded in reimbursement claim number three $44,000.00 to Ronald, which reflects one-half of the community estate's $88,000.00 in principal indebtedness reduction for the McGehee Note. We are confident that the trial court, if it determines on remand that it is appropriate to award Ronald reimbursement for the Van Zandt County property debt reduction, will correctly reflect that this finding relates to the "McGehee Note."

665. Deborah argues that Ronald failed to provide sufficient proof of the amounts of the payments for reimbursement claims one through five. However, Deborah admitted that Ronald made all the debt service payments after they acquired the property with community funds Ronald earned as part of his law practice, and that she was either unemployed or made no contribution to the debt service for these amounts. Furthermore, Ronald testified at trial as to the amounts he paid on the notes and taxes, as well as the principal remaining on each note at the time of trial, which was uncontroverted.

Next, Ronald's reimbursement claim seven reflects an award for noncapital improvements made by the community estate to Deborah's separate property in Van Zandt County. Noncapital improvements made by the community in favor of a spouse's separate estate are also generally recoverable at common law, which is typically measured by the dollar amount of the contribution. *See, e.g., Hailey v. Hailey*, 176 S.W.3d 374, 384-85 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (court permitted reimbursement for $1,500 in improvements to house, including new roof, paint, and flooring; $218 in supplies for house; $1,028 for utility payments; and $2,125 for repairs to house). In addition to Deborah's argument that Ronald failed to present sufficient proof to prove these claims, she also argues that the trial court awarded a double recovery as to the sprinkler system and pump as both a capital improvement and noncapital improvement.

Since we have already held that an entire new property division is required, our resolution of these matters is not necessary to this disposition of the appeal. *See* Tex. R. App. P. 47.1

In her third issue, Deborah argues that the trial court's division of property was not just and right. We have held that a remand and new trial is necessary to properly evaluate the reimbursement claims under the correct standards. That threshold determination of the proper reimbursement amounts under the correct legal principles after retrial may affect the equities as to a just and right equitable division of the property, which is a matter solely for the trial court. *See Jacobs*, 687 S.W.2d at 733; *McKnight*, 543 S.W.2d at 867; *Gutierrez*, 791 S.W.2d at 661. Consequently, our consideration of whether the equitable property division was just and right is unripe for review here, is unnecessary to our disposition of this appeal, and we do not reach it.

**Summation**

The portion of Deborah's first issue that the trial court erred in its method of valuing and awarding reimbursement claims six and eight, and that it failed to consider her offset claims is sustained. The remaining arguments of her first issue pertaining to reimbursement claims one through five and seven are either unripe for our review or unnecessary to the disposition of the appeal. Her third issue that the trial court's property division is not just and right is likewise unripe for our review.

## RONALD'S CONTINUED USE AND POSSESSION OF VAN ZANDT COUNTY PROPERTY

In Deborah's second issue, she contends that the trial court erred by ordering Ronald to have continued use and possession of Deborah's separate real property.

The trial court ordered Ronald have "continued use and possession" of Deborah's separate real property until Deborah pays the reimbursement claims and that Deborah would be responsible for all bills related to the property after the taxes were paid, which were due on January 31, 2021. Specifically, the order authorized Ronald to remain on the property for up to 120 days following the date of the final decree of divorce or thirty days after Deborah pays the reimbursement award, whichever is latest.

As Deborah concedes, Ronald was not given exclusive use and possession, but the trial court ordered that Deborah's use of the property "shall not work to materially interfere with Ronald Wells['] use and possession of the property." The trial court suspended the operation of the division of property and ordered that rent from Ronald shall offset any reimbursement amounts owed by Deborah pending appeal.

"Community property consists of the property, other than separate property, acquired by either spouse during marriage." TEX. FAM. CODE ANN. § 3.002 (West 2006). Separate property of a spouse includes "property owned or claimed by the spouse before marriage" and "property acquired by the spouse during marriage by gift, devise, or descent." *Id.* § 3.001(1), (2) (West 2006). All property identified and characterized as a spouse's separate property must be confirmed to that spouse. *See id.* § 7.002(b), (c) (West 2020); *see, e.g., Old Republic Nat'l Title Ins. v. Bell*, 549 S.W.3d 550, 557 (Tex. 2018) (trial court confirmed house as wife's separate property). "Each spouse has the sole management, control, and disposition of that spouse's separate property." TEX. FAM. CODE ANN. § 3.101 (West 2006). A court is prohibited by law from divesting a spouse of title to her separate property by awarding it to the other spouse.

*Cameron v. Cameron*, 641 S.W.2d 210, 219–20 (Tex. 1982); *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 140–41 (Tex. 1977).

However, a court can award one spouse a present possessory interest in the other spouse's separate property homestead when it is necessary to support a minor child. *See Eggemeyer*, 554 S.W.2d at 141–42; *In re Marriage of Thurmond*, 888 S.W.2d 269, 275 (Tex. App.—Amarillo 1994, writ denied) (wife was awarded present possessory interest in separate property homestead because it was in child's best interest to remain in home); *Villarreal v. Laredo Nat'l Bank*, 677 S.W.2d 600, 606 (Tex. App.—San Antonio 1984, writ ref'd n.r.e.). Setting aside separate property for the benefit of a minor child is not considered a divestment of title to the property as long as title remains with the property-owning spouse. *See Eggemeyer*, 554 S.W.2d at 141–42.

There are no minor children in the marriage here, and Ronald has cited no other basis that would authorize the trial court to award him a continued present possessory interest past the period it has power to order such possession during its temporary order authority period. *See* TEX. FAM. CODE ANN. §§ 6.502(a)(6), 6.709(a)(4) (West 2020). Ronald contends, however, that Deborah waived any challenge to his continued use of possession when she testified that she would allow Ronald to stay at the Van Zandt County property as long as he paid the notes, taxes, utilities, and maintained the property. We disagree. Deborah did not agree to this arrangement for all time and she contends that the trial court's order limits her ability to sell the property and satisfy the equitable lien resulting from these reimbursement claims, which would in turn trigger Ronald's obligation to surrender use and possession of the property.

In any event, as we have alluded to, the trial court has the authority to issue temporary orders during the pendency of the case, including through appeal, awarding among other things, exclusive possession of the residence. *See id.* Given our disposition of this case at this juncture, we need not address this issue because it is unripe for review. That is, we have held that the property division and related issues must be remanded to the trial court for a new trial. While holding a new trial on those issues, the trial court maintains the authority to create further temporary orders concerning the use and possession of real property during the pendency of the proceedings, even over Deborah's separate property such as the Van Zandt County real estate. *See id.*

17

## DISPOSITION

Because neither spouse has challenged or otherwise complained of the dissolution of the marriage, we affirm the judgment to the extent that it grants a divorce.  *See **Roberts***, 999 S.W.2d at 442; *see also **Roach***, 672 S.W.2d at 532.  However, we have held that the trial court abused its discretion in the valuation of some of Ronald's equitable reimbursement claims, and have therefore sustained portions of Deborah's first issue.  In such a circumstance, we must reverse and remand the entire property division for the trial court's reconsideration.  *See **Jacobs***, 687 S.W.2d at 733; ***Gutierrez***, 791 S.W.2d at 661 (following ***Jacobs*** and holding that error in amount of reimbursement award led to a reversal and remand of the entire property division).  We have also held that the remaining portions of Deborah's first issue, along with her second and third issues, are either unripe for review or unnecessary to the disposition of this appeal.

Accordingly, we ***affirm*** the portion of the decree granting Ronald's and Deborah's divorce, but ***reverse*** and ***remand*** the entire property division and related claims disposed of in the final decree of divorce for further proceedings consistent with this opinion.

**GREG NEELEY**
Justice

Opinion delivered August 30, 2022.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

18



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**AUGUST 30, 2022**

**NO. 12-21-00152-CV**

**IN THE MATTER OF THE MARRIAGE OF
RONALD WELLS AND DEBORAH WELLS,**

Appeal from the County Court at Law
of Van Zandt County, Texas (Tr.Ct.No. FM18-00369)

THIS CAUSE came to be heard on the oral arguments, appellate record and briefs filed herein, and the same being considered, because it is the opinion of this Court that there was error in judgment of the court below, it is ORDERED, ADJUDGED and DECREED by this Court that the portion of the judgment regarding the entire property division and related claims disposed of in the final decree of divorce be **reversed** and the cause **remanded** to the trial court for further proceedings consistent with this opinion; it is further ORDERED, ADJUDGED and DECREED that the portion of the decree granting Ronald and Deborah Wells's divorce be **affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

19